1  RANDALL M. PENNER (State Bar No. 101201)
   PENNER, BRADLEY & BUETTNER
2  1171 West Shaw Avenue, Suite 102
   Fresno, California 93711
3  Phone: (559) 221-2100
   Fax: (559) 221-2101
4
5  JAMES C. BARBER (State Bar No. 01706000)
   Law Offices of James C. Barber (**Pro Hac Vice**)
   4310 Gaston Avenue
6  Dallas, Texas 75246
   Phone: (214) 821-8840
7  Fax: (214) 821-3834

8  Attorneys for Plaintiff MARGARITA GAETA
   as Guardian Ad Litem for A. G., a minor child.
9

10               UNITED STATES DISTRICT COURT

11              NORTHERN DISTRICT OF CALIFORNIA

12                      SAN JOSE DIVISION

13

14  MARGARITA GAETA,                    )    CASE NO: C05 04115 *JW*
    As Guardian Ad Litem for            )
15  A. G., a minor child,               )    **PLAINTIFF'S FIRST AMENDED**
                                        )    **COMPLAINT - DEMAND FOR**
16              Plaintiff,              )    **JURY TRIAL**
                                        )
17        v.                            )
                                        )
18  PERRIGO PHARMACEUTICALS             )
    COMPANY; and LONGS DRUG STORES      )
19  CORPORATION,                        )
                                        )
20              Defendants.             )
                                        )
21  _____   )

22

23

24        NOW COME Margarita Gaeta as Guardian ad Litem for A.G., a minor child, (plaintiff), and

25  file Plaintiff's First Amended Complaint—Demand for Jury Trial against Perrigo Pharmaceuticals

26  Company, Longs Drug Stores Corporation (defendants), and would show the following:

27

28

PLAINTIFF'S FIRST AMENDED COMPLAINT          GAETA V. PERRIGO et. Al.
DEMAND FOR JURY TRIAL                         CASE NO:

I.

## PARTIES

1.    Plaintiff is a citizen and resident of Madera County, California.

2.    Defendant Longs Drug Stores Corporation is a corporation organized under and by virtue of the laws of the state of Maryland, and can be served by serving its registered agent for service, CT Corporation System located at 818 West Seventh Street, Los Angeles, California 90017.

3.    Defendant Perrigo Pharmaceuticals Company is a corporation organized under and by virtue of the laws of the state of Michigan, with a principal place of business in Allegan County, Michigan, and can be served by serving its agent for service Todd W. Kingma located at Perrigo Pharmaceutical Company located at 515 Eastern Avenue, Allegan, Michigan 49010.

II.

## JURISDICTION AND VENUE

4.    Jurisdiction and venue are proper in the United States District Court, Northern District of California, San Jose Division, under 28 U.S.C. § 1332, based on diversity of citizenship and the amount in controversy exceeding $75,000, because plaintiff is a resident of the State of California and defendants are all residents of states other than California; and under 28 U.S.C. § 1391(a)(2), because a substantial part of the events or omissions giving rise to this claim occurred in Santa Clara County, California.

5.    California courts have personal jurisdiction over defendants because defendants conduct or conducted at all relevant times business throughout California, including this District and Division.

6.    Specifically, defendant Longs Drug Stores Corporation ("Longs" or "the defendant Longs"), is a corporation organized under and by virtue of the laws of the state of Maryland, which is qualified to do business in California, and is doing business in Santa Clara County, California. California courts have personal jurisdiction over Longs because it conducts business throughout California, including this District and Division.

7.      Defendant Perrigo Pharmaceuticals Company ("Perrigo" or "the defendant Perrigo") is a corporation organized under and by virtue of the laws of the state of Michigan, with a principal place of business in Allegan County, Michigan, which is qualified to do business in California, and is doing business in Santa Clara County, California.  California courts have personal jurisdiction over Perrigo because it conducts business throughout California, including this District and Division.

### III.

### STATEMENT OF FACTS

8.      Defendant Perrigo was at all material times hereto in the business of designing, manufacturing and marketing an over-the-counter (OTC) nonsteroidal anti-inflammatory analgesic drug called Longs Profen IB, generic name ibuprofen ("the drug").

9.      Defendant Perrigo is primarily responsible for manufacturing and labeling the drug, under the direction and control of defendant Longs pursuant to a contract manufacturing agreement. Perrigo is in the business of designing, manufacturing, selling, and distributing the drug OTC to consumers and users in California and throughout the United States through various retailers, including defendant Longs retail stores and pharmacies.  Defendant Longs distributed and sold the OTC drug to consumers in California including plaintiff in retail stores and pharmacies.

10.      Defendants intended that the drug reach users or consumers such as plaintiff in the condition in which it was originally sold and distributed by them.  Further, defendants put this drug into the stream of commerce without any alteration or modification by any distributor or retailer.

11.      Additionally, at all material times defendants manufactured, distributed, and marketed the drug to be sold to consumers in California and throughout the United States.

12.      On or about June 3, 2004, the minor plaintiff, A. G.(minor child), a ten-year old male child with no known drug allergies, was in a state of good health when he underwent a surgical procedure to remove two congenital melanocytic nevus from his shoulders at Children's Hospital of Central California. During the surgical procedure to remove the nevus from his shoulders he was administered an anesthetic called halothane for a very short period of time. Post-operatively, he was

1  administered ibuprofen for post-operative pain. Upon discharge from the hospital, he was instructed

2  to take OTC ibuprofen for pain.

3    13.    After being discharged from the hospital, plaintiff purchased the drug called Longs

4  Profen IB product and minor plaintiff A.G. started taking the OTC ibuprofen product between June

5  4, 2004 through June 13, 2004. Sometime before June 11, 2004, the minor A.G. developed a fever

6  and loss of appetite. He was evaluated by his pediatrician on June 11, 2004 where he complained of

7  fever and dizziness. His physician instructed him to continue the ibuprofen every 6 hours. He also

8  developed progressive dehydration and lack of appetite. He returned to see his physician on June 13,

9  2004 where he was found to be significantly dehydrated, jaundiced and ataxic. He was referred to

10  the emergency room at Children's Hospital of Central California for septic shock.

11    14.    Upon admission to Children's Hospital of Central California on June 13, 2004, it was

12  recorded that he developed a rash, hypotension, coagulopathy, hypoglycemia, transaminitis, acute

13  liver dysfunction and hepatorenal syndrome. His medication history revealed that he had been using

14  ibuprofen and not acetaminophen. He was admitted briefly to the PICU where his work-up revealed

15  that his liver enzymes were extraordinarily elevated with his AST and ALT 11,304 and 6,757,

16  respectively. All viral and congenital etiologies for the acute liver dysfunction were ruled out

17  including EB, CMV, and Hepatitis A, B and C. Additionally, toxicology/therapeutic levels were

18  measured for acetaminophen and were negative. In the early morning hours of June 14, 2004, he was

19  transferred to Lucille Salter Packard Children's Hospital at Stanford for possible need of liver

20  transplant and renal insufficiency, Stage 2 hepatic encephalopathy with shock and respiratory

21  distress.

22    15.    On January 14, 2004, he was admitted to PICU at Lucille Packard, located in Santa

23  Clara County, California with acute hepatic failure and he underwent dialysis for his acute renal

24  failure. He underwent a liver biopsy and orthotic liver transplant on June 16, 2004. Pathology

25  reported that the liver revealed massive hepatic necrosis most likely to be drug mediated due to

26  eosinophilia detected in the biopsy. Etiologies for his acute liver failure were ruled out by the

27  physicians at Lucille Packard, including infections, malignancy, metabolic problems such as

28

1    autoimmune hepatitis, and congenital causes. Several physicians stated that ibuprofen toxicity was

2    a cause of his acute liver failure.

3        16.    As a result of his acute liver failure he developed coagulopathy disorders that led to

4    vascular compromise with embolic events and compromised perfusion to his bilateral upper and

5    lower distal extremities. He developed several necrotic digits of his bilateral hands, as well as his

6    feet. His digits became gangrenous, which led to the eventual amputation of some of his fingers and

7    toes.

8        17.    The minor plaintiff A. G. was hospitalized from June 14, 2004 until September 3,

9    2004 at Lucille Packard due to significant complications including multiple infections, cholestasis,

10   renal dysfunction, abdominal wound from surgery, and severe depression. He underwent multiple

11   debridements on his right hand, feet and his abdomen. He required dialysis for his renal failure for

12   several weeks after his surgery. He was stabilized and transferred to Children's Hospital at Central

13   California for extensive rehabilitation.

14       18.    On September 3, 2004, he was admitted to Children's Hospital of Central California

15   for rehabilitation and treatment of his injuries from his liver failure. He developed severe

16   hypertension, anemia and pancytopenia. He continued to be severely depressed and was treated with

17   anxiety and anti-depressant medications. He was slowly transitioned from NG feedings to oral

18   feedings. He had multiple skin grafts and amputations to his thighs, ankles, feet and digits on his

19   hands during this hospitalization.

20       19.    He had a graft from his abdomen from the left thigh on 9/15/04 and underwent

21   amputation of his right distal finger with a foot debridement on 10/06/04. He also had skin grafts

22   to the ankles and feet from the left thigh on 11/12/04. Amputation of four digits on the right foot

23   and partial amputation of four toes on the left foot took place on 12/07/04. A bone scan performed

24   on 12/20/04 showed suspected bilateral tilar and tarsal avascular necrosis. Throughout his

25   hospitalization he also underwent OT and PT to learn how to walk with his amputated toes and was

26   given special splints to assist him to transfer and walk using wheelchair and crutches.

27

28

20. He was hospitalized from September 3, 2004 through December 29, 2004 when he was discharged home being able to use a wheelchair and crutches to walk short distances. Since his discharge, the minor plaintiff A. G. continues to follow-up routinely with nephrology, gastroenterology and surgical clinics for continued preservation of remaining digits that could be subject to amputation, and to monitor his liver function for transplant rejection, as well as for other rehabilitative purposes to assist him with daily living.

21. The minor plaintiff A. G. is permanently disabled from the acute liver and renal failure requiring a liver transplant, and amputation of his toes, which are injuries he sustained as a result of his ingestion of the OTC ibuprofen. He suffers from severe depression from the loss of his extremities and his inability to function normally like other adolescents his age, and from anxiety and fear from the past amputations, and the possibility of subsequent liver failure and future amputations.

22. Plaintiff had no knowledge of any potential dangerous defect or condition in the drug at the time the minor plaintiff A.G. used it, and certainly no knowledge that it could cause acute liver failure, renal failure and necrotic extremities leading to amputations of his fingers and toes secondary to his liver failure. Nor did Perrigo or Longs warn in any of the materials distributed with the drug, in the package insert, or on the drug box, or in any of its advertising designed to reach the consumer, that the drug could cause acute liver failure, renal failure or necrotic extremities leading to amputations of his fingers and toes secondary to his liver failure, or what to do if the early symptoms of liver dysfunction or renal insufficiency occur after ingesting ibuprofen, including rash, fever, abdominal pain or decreased urine output, and to discontinue the drug if any of these symptoms appear.

23. Plaintiff used the drug in the manner intended and in accordance with instructions that defendants included with the drug by defendants for use as pharmacologic treatment for his pain and fever. As a result of using the drug, minor plaintiff A. G. suffered serious, painful, and permanently disabling injuries, including permanent and severe liver injury, amputation to his toes and other painful necrotic digits, hypertension, severe depression and immobility due to losing his fingers and

1   toes. He also has suffered substantial disfigurement and scarring from his injuries and physical

2   injuries and impairment. As a result of his injuries, he will require extensive and permanent

3   rehabilitative and medical care for the rest of this life, as a result of his ingestion of the drug

4   (ibuprofen). Defendants' actions or omissions including defective design, marketing defect,

5   breaches of express and implied warranties, negligence and gross negligence were a substantial

6   factor in causing these injuries to plaintiff.

7                                               **IV.**

8                                     **CAUSE OF ACTION**

9                                   **AGAINST ALL DEFENDANTS**

10

11          **A.      Defective Design**

12          24.     Plaintiff adopts all of the foregoing allegations in paragraphs 8-23 by reference, as

13   if incorporated verbatim herein. Additionally, plaintiff alleges that the drug was defectively designed

14   by defendants because the OTC ibuprofen ingested by the minor plaintiff A.G. did not perform as

15   safely as an ordinary consumer would have expected it to perform at the time that the minor plaintiff

16   A.G. used Longs Profen IB (ibuprofen), which rendered it unreasonably dangerous to minor plaintiff

17   A.G. and other persons similarly situated. Plaintiff at all times hereto used the product in a way that

18   was reasonably foreseeable to Perrigo and Longs and did not misuse the product pursuant to the box

19   and labeling that accompanied the product.

20          25.     In particular, it contained the chemical constituent propionic acid and other

21   ingredients rendering it more toxic than other non-propionic acid based NSAID drugs, and more

22   dangerous to certain persons, particularly children, than other NSAIDS or fever-reducing products.

23          26.     Additionally, defendants failed to adequately test the drug for over the counter use

24   with children before presenting it to the FDA for such use and before selling and distributing it to

25   the general public; and/or failed to adequately and completely report the risks of liver injury and

26   renal failure associated with the use of OTC ibuprofen to treat children for pain or fever.

27

28

PLAINTIFF'S FIRST AMENDED COMPLAINT
DEMAND FOR JURY TRIAL                              7                   GAETA V. PERRIGO et. Al.
                                                                       CASE NO:

27.     Additionally, a safer alternative design existed which would have prevented or significantly reduced the risk of the minor plaintiff A.G.'s injuries, without substantially impairing the drugs utility, i.e. dexibuprofen. Furthermore, this safer alternative design was economically and technologically feasible at the time the drug left the control of defendants by the application of existing or reasonably achievable scientific knowledge.  Finally, the drugs risk to children far outweighed its benefit, particularly considering that there were other drugs on the market and available OTC, which were safer and equally as effective in reducing fever and pain in children.

**B.     Marketing Defect**

28.     Plaintiff adopts all of the foregoing allegations in paragraphs 8-27 by reference, as if incorporated verbatim herein.  Additionally, plaintiff alleges that the drug was also defective and unreasonably dangerous because there was no warning, or alternatively, no adequate warning that consumption of this drug could result in acute liver failure, renal failure, or in any type of severe life-threatening conditions, including septic shock, vascular compromise, or necrotic extremities.

29.     The warnings and instructions that accompanied the drug provided inadequate warnings to the consumer and/or healthcare provider about the risk of acute liver failure, renal failure, or in any type of severe life-threatening conditions, including septic shock, vascular compromise, or necrotic extremities, the degree of the risk of these conditions, and about other serious reactions associated with the use of the drug that plaintiff suffered, or what to do in the event the patient suffered an adverse reaction to the drug, such as discontinuing the drug if early symptoms of liver or renal dysfunction develop, including dehydration, rash and decreased urine output.

30.     Specifically, there was no warning about acute liver failure or hepatorenal syndrome on the box or bottle label at all, even though defendants had known about the connection between the drug and this severe, potentially fatal reaction since the late eighties.  Additionally, there was no warning that if early symptoms of acute liver dysfunction or renal insufficiency develop, that the drug should be stopped immediately and medical care sought, because such symptoms could be symptoms of a life-threatening condition.  Nor was there any warning that there was a greater risk

of such reactions in children and that there was a greater risk of acute liver failure if the drug was used in conjunction with other well known hepatotoxic drugs. Specifically, the defendants have failed to provide adequate precautions to healthcare providers and consumers, including plaintiff, that there are increased risks of acute liver failure if ibuprofen is taken with other drugs or by itself. These marketing defects were the producing cause of the plaintiff's permanent injuries and damages.

### C. Breach of Express Warranty

31. Plaintiff adopts all of the foregoing allegations in paragraphs 8-30 by reference, as if incorporated verbatim herein. Additionally, plaintiff alleges that defendants made express warranties as to the drug's utility in treating fever and pain symptoms/conditions, without making clear the extreme danger associated with a toxic reaction to this drug.

32. The express warranties described were part of the basis of the bargain between plaintiff and defendants. The drug was not of the quality or condition expressly warranted by the defendants affirmations, and defective in that the drug is inherently dangerous to children, particularly children, and therefore cannot be used in the manner intended without serious risk of physical injury or death to the user.

### D. Breach of Implied Warranty

33. Plaintiff adopts all of the foregoing allegations in paragraphs 8-32 by reference as if incorporated verbatim herein. In addition, plaintiff alleges that defendants impliedly warranted to the public generally and specifically to the plaintiff that the drug was of merchantable quality and was safe and fit for the purpose intended when used under ordinary circumstances and in an ordinary manner.

34. Defendants knew or had reason to know of the purposes for which plaintiff purchased the drug; that plaintiff was relying on defendants' skill and judgment to select and furnish a suitable drug; and that the drug in question was unfit for the purpose for which it was intended to be used.

### E.    Negligence and Gross Negligence

35.    Plaintiff adopts all of the foregoing allegations in paragraphs 8-34 by reference as if incorporated verbatim herein.  Additionally, plaintiff alleges that defendants had a duty to use reasonable care in labeling, packaging, marketing, selling, advertising, warning, and otherwise distributing the drug.  However, even though they knew that there was a probable relationship between the drug and acute liver failure and renal failure,  and also knew that it was a serious, often fatal or life-threatening reaction; and even though they also knew that the medical literature for years had shown a connection between these reactions and NSAIDS or ibuprofen; and also knew there had been reported severe cases of liver dysfunction and renal failure associated with ibuprofen in children; defendants still deliberately placed the drug on the market without warning the user or consumer that consumption of this drug could result in acute liver failure, renal failure, septic shock, necrotic extremities, or death.

36.    Additionally, they failed to warn plaintiff to stop the drug immediately and seek medical attention if any early symptoms of acute liver and renal failure developed, because of the danger that such symptoms could progress to multi-organ failure and death.  These acts and omissions, taken by themselves or in combination, were negligence and gross negligence, and were a proximate cause of the plaintiff's permanent injuries and damages, including punitive damages, as hereinafter set out.

37.    Each and all of the foregoing acts or omissions on the part of defendants, acting separately and collectively, were a proximate and producing cause of the injuries and damages sustained by the plaintiff herein.


### F.    Deceit by Concealment—Cal. Civ. Proc. Code §1709-10, et. seq.

38.    Plaintiff incorporates by reference herein paragraphs 8 through 37 as though fully set forth herein.  Additionally, they allege that defendants, and each of them, knew that after the FDA concluded that there was a causal relationship between NSAIDs and acute liver failure and renal failure, along with the published literature establishing increased risks of liver and renal failure

1   associated with NSAIDs and ibuprofen, and they also knew that there were cases of acute liver and

2   renal failure associated with ibuprofen but did not report them to healthcare providers or the FDA;

3   and also misrepresented the true risks and incidence of liver and renal failure, and other serious

4   reports of liver and renal dysfunction with the drug; and failed to place a warning about these

5   potentially fatal reactions on the box or bottle label of the drug.

6          39.    Additionally, defendants knowingly made false and fraudulent representations in their

7   marketing and advertising campaign, including: 1) that the drug was more effective than

8   acetaminophen when they knew it was not; 2) that the drug had been adequately and reliably tested

9   for use in the dosages recommended for children, which it had not; and 3) that it was safe for

10  use by children in the recommended dosages, which it was not.

11         40.    Additionally, defendants possessed and continue to possess scientific data

12  demonstrating that the drug was linked to serious illness and potential fatal reactions, including acute

13  liver failure and acute renal failure, but failed to warn about these serious and potentially fatal

14  adverse reactions on the box or bottle label of defendants' product.

15         41.    At all material times herein, defendants, and each of them, conducted a sales and

16  marketing campaign to promote the sale of the drug to willfully deceive minor A.G.'s physicians and

17  the general public as to the health risks and consequences of the use of the drug.  Defendants, and

18  each of them, were aware that the drug was not safe, fit, or effective for human consumption, that

19  use of the drug is hazardous to health, and that said drug has an unacceptable risk of serious injury

20  and death to children, including the injuries suffered by plaintiff.

21         42.    Further, defendants intentionally concealed and suppressed the true facts concerning

22  said product with the intent to defraud plaintiff, because the defendants knew that the plaintiff or

23  other consumers similarly situated would not purchase or use the drug, if they were fully aware of

24  the true facts concerning said drug.

25

26

27

28

PLAINTIFF'S FIRST AMENDED COMPLAINT                           GAETA V. PERRIGO et. Al.
DEMAND FOR JURY TRIAL                          11            CASE NO:

G.    **Violation of Business & Professions Code § 17200.**

43.    Plaintiff incorporates by reference Paragraphs 1 through 42 as though fully set out herein. Additionally, plaintiff alleges that she bring this cause of action pursuant to Business and Professions Code § 17204 in their individual capacity, and not on behalf of the general public. This law provides that unfair competitions shall mean and include all unlawful, unfair or fraudulent business practices and unfair, deceptive, untrue, or misleading advertising.

44.    The acts and practices described in Paragraphs 39 through 43 above were and are likely to mislead the general public and therefore constitute unfair business practices within the meaning of Business & Professions Code §§ 17200 and 17500.

45.    The unlawful business practices of defendants described herein present a continuing threat to members of the public in that defendants continue to engage in the conduct described herein.

46.    As a result of their conduct described herein, defendants have been and will be unjustly enriched. Specifically, defendants have been unjustly enriched by receipt of hundreds of millions of dollars in ill-gotten gains from the sale of the drug in California, sold in large part as a result of the acts and omissions described above.

47.    Because of the fraudulent misrepresentations made by defendants as detailed above, and the inherently unfair practice of committing a fraud against the public by intentionally misrepresenting and concealing material information, the acts of defendants described herein constitute unfair or fraudulent business practices.

H.    **Violation of Business & Professions Code §17500.**

48.    Plaintiff incorporates by reference Paragraphs 1 through 47 as though set forth fully herein. Additionally, plaintiff alleges that she brings this cause of action pursuant to Business & Professions Code § 17500, in that defendants committed the acts alleged in Paragraphs 39 through 47 with the intent to induce members of the public to purchase and use Longs Profen IB. Finally,

PLAINTIFF'S FIRST AMENDED COMPLAINT
DEMAND FOR JURY TRIAL

12

GAETA V. PERRIGO et. Al.
CASE NO:

1   plaintiff alleges that she brings this cause of action pursuant to <u>Business and Professions Code</u> §

2   17204 in their individual capacity, and not on behalf of the general public.

3          49.     As a result of their false and misleading statements described above, defendants have

4   been and will be unjustly enriched.   Specifically, defendants have been unjustly enriched by

5   hundreds of millions of dollars in ill-gotten gains from the sale of Longs Profen IB in California, sold

6   in large part as a result of the false and/or misleading statements described herein.

7          50.     Pursuant to <u>Business & Professions Code</u> § 17535, plaintiff seeks an order of this

8   court compelling the defendants to provide restitution, and to disgorge the monies collected and

9   profits realized by defendants, and each of them, as a result of their unfair business practices, and

10  injunctive relief calling for defendants, and each of them to cease such unfair business practices in

11  the future.

12         51.     Plaintiff seeks the imposition of a constructive trust over, and restitution and

13  disgorgement of, the monies collected and profits realized by defendants, and each of them, to cease

14  such false and misleading advertising in the future.

15                                              **V.**

16                                          **DAMAGES**

17         52.     Plaintiff incorporates by reference Paragraphs 1 through 51 as though set forth fully

18  herein.  Plaintiff seeks damages from defendants, jointly and severally, for the injuries and damages

19  caused by use of the product manufactured, marketed and sold by defendants in an amount in excess

20  of the minimum jurisdiction limits of this Court.  It is not possible for plaintiff to plead the exact

21  amount of these damages at this time, but she will plead it at a later time when it can be determined

22  and as may be required by the rules.

23         53.     Plaintiff alleges that the foregoing negligence and strict liability of defendants, acting

24  separately and collectively, was a direct, proximate and\or producing cause of the damages suffered

25  by plaintiff herein.

26

27

28

PLAINTIFF'S FIRST AMENDED COMPLAINT                    13          GAETA V. PERRIGO et. Al.
DEMAND FOR JURY TRIAL                                             CASE NO:

54.     As a direct and proximate\producing result of the negligence and strict liability of defendants as set out above, Plaintiff A.G. has suffered the following injuries and damages, among others, for which defendants are jointly and severally liable:

    a.    Minor Plaintiff A.G. has suffered physical impairment in the past and, in reasonable probability, sch impairment will continue into the future;

    b.    Minor Plaintiff A.G. has incurred extensive past medical and rehabilitation expenses for treatment of his injuries, and will incur future reasonable and necessary expenses for such medical care and treatment;

    c.    Minor Plaintiff A.G. has suffered severe physical pain and mental anguish caused by his injuries, treatment and rehabilitation, and, in all reasonable probability will continue to suffer in this matter in the future;

    d.    Minor Plaintiff A.G. has suffered physical disability, including loss of his fingers and toes, lost his liver which required a liver transplant, physical impairment of walking and running and uses a wheelchair to get around; post operative wounds and scarring, and disfigurement in the past, and will continue to suffer from this disability and disfigurement in the future;

    e.    Minor Plaintiff A.G. has suffered permanent vocational impairment to his ability to obtain and perform any meaningful employment, rendering him totally and permanently disabled.

55.     As a direct and proximate result of the negligence and strict liability of defendants as set out above, Plaintiff Margarita Gaeta has suffered the following injuries and damages, among others, for which defendants are jointly and severally liable:

    a.    Past and future loss of consortium, companionship, and impairment to the parent-child relationship;

    b.    Medical, rehabilitative, and attendant care expenses to age 18 for A.G.

## VI.

## PUNITIVE DAMAGES

56.     Plaintiff incorporates by reference Paragraphs 1 through 55 as though set forth fully herein.  As a result of defendants' product liability, negligence, gross negligence, and intentional misrepresentation in manufacturing and placing into the stream of commerce a drug unsafe for the purpose intended; in failing to adequately warn the ultimate user and consumer of the inherent dangers in said drug; in failing to provide instructions for the safe use of said dangerous drug when defendants knew or should have known of the probable harm, injury or death the drug could cause to the user; and in deliberately failing to warn about the danger of this potentially disastrous toxic reaction; defendants should be held liable for gross negligence and intentional misconduct.  Plaintiff Margarita Gaeta as Guardian Ad Litem for A. G., is therefore entitled to recover the punitive and exemplary damages for the gross negligence of defendants.

57.     Plaintiff also alleges that each act of negligence by all of the defendants constituted individual and/or collective acts of gross negligence and/or fraud, oppression or malice against plaintiff. Specifically, plaintiff adopts each of the allegations in paragraphs 8-55.  These acts of negligence by all defendants involved an extreme degree of risk of harm to the plaintiff and constitute.

58.     Specifically, there was a high degree of risk of harm and death from acute liver failure and renal failure from this drug due to its constituents.  Yet they proceeded with conscious indifference to the minor A.G.'s safety and welfare; and/or alternatively, showed such actual conscious indifference to the rights, welfare, and safety of the minor A.G. to constitute fraud, oppression, or malice or gross negligence.

59.     Plaintiff is also entitled to prejudgment interest on said damages attributable to an ascertainable economic value pursuant to Civil Code §§ 3288, 3291.

PLAINTIFF'S FIRST AMENDED COMPLAINT
DEMAND FOR JURY TRIAL.                                    15                    GAETA V. PERRIGO et. Al.
                                                                                CASE NO:

VII.

**JURY DEMAND**

60.     Plaintiff respectfully requests a trial by jury and have tendered the required jury fee with their Original Complaint.

WHEREFORE, PREMISES CONSIDERED, plaintiff prays that defendants be cited to appear and answer herein, that upon final hearing of this cause, plaintiff has judgment against defendants for actual, punitive, and all other damages as provided by law, together with interest as provided by law and costs of court, attorney's fees, injunctive relief, and for such other and further relief, general and special, to which plaintiff may be entitled, either at law or in equity.

Dated: October  13, 2005

By _____

RANDALL M. PENNER
PENNER, BRADLEY & BUETTNER
1171 W. Shaw Ave., Ste. 102
Fresno, California 93711
Phone: (559) 221-2100
Fax: (559) 221-2101
(State Bar No.101201)

By _____

JAMES C. BARBER
Law Offices of James C. Barber (Pro Hac Vice)
4310 Gaston Ave.
Dallas, Texas 75246
Phone: (214) 821-8840
Fax: (214) 821-3834
(State Bar No.01706000)

PLAINTIFF'S FIRST AMENDED COMPLAINT
DEMAND FOR JURY TRIAL                    16              GAETA V. PERRIGO et. Al.
                                                         CASE NO:

1    **DEMAND FOR JURY TRIAL**

2         Plaintiff respectfully requests a trial by jury and have tendered the required jury fee with their

3    Original Complaint.

4

5    Dated: October ß , 2005

6

7                                              By _____

8                                              RANDALL M. PENNER
                                               PENNER, BRADLEY & BUETTNER
9                                              1171 W. Shaw Ave., Ste. 102
                                               Fresno, California 93711
10                                             Phone: (559) 221-2100
                                               Fax: (559) 221-2101
11                                             (State Bar No.101201)

12

13                                             By _____

14
                                               JAMES C. BARBER
15                                             Law Offices of James C. Barber (Pro Hac Vice)
                                               4310 Gaston Ave.
16                                             Dallas, Texas 75246
                                               Phone: (214) 821-8840
17                                             Fax: (214) 821-3834
                                               (State Bar No.01706000)

18

19

20

21

22

23

24

25

26

27

28