RANDALL M. PENNER (State Bar No. 101201)
PENNER, BRADLEY & BUETTNER
1171 West Shaw Avenue, Suite 102
Fresno, California 93711
Phone: 559-221-2100
Fax: 559-221-2101

TED B. LYON, JR. (State Bar No. 12741500) (*Pro Hac Vice*)
DAVID TOWNEND (State Bar No. 20155700) (*Pro Hac Vice*)
MARQUETTE WOLF (State Bar No. 00797685) (*Pro Hac Vice*)
Law Office of Ted B. Lyon & Associates, P.C.
18601 LBJ Freeway, Suite 525
Mesquite, Texas 75150
Phone: 972-279-6571
Fax: 972-279-3021

Attorneys for Plaintiffs AUGUSTINE GAETA, individually,
and MARGARITA GAETA, individually, and as Guardian Ad
Litem for A.G. a minor child.

**IT IS SO ORDERED**
*/s/ James Ware*
Judge James Ware

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE DIVISION

| | |
|---|---|
| **AUGUSTINE GAETA, et al.,**<br><br>*Plaintiffs*<br><br>v.<br><br>**PERRIGO PHARMACEUTICALS COMPANY, et al.,**<br><br>*Defendants.* | CASE NO. C-05-04115 JW (PVT)<br><br>JOINT STATEMENT IN RESPONSE TO ORDER TO SHOW CAUSE RE SETTLEMENT ;<br><br>ORDER VACATING ORDER TO SHOW CAUSE HEARING; SETTING CASE MANAGEMENT CONFERENCE<br><br>DATE:       September 8, 2008<br><br>TIME:       9 a.m.<br>LOCATION: Courtroom 8<br>                   Hon. Judge James Ware |

**TO THE HONORABLE UNITED STATES DISTRICT JUDGE:**

Pursuant to the Court's Order dated July 25, 2008, Plaintiffs Augustine Gaeta and Margarita Gaeta, individually and as Guardian Ad Litem for A.G., a minor (collectively, "Plaintiffs"), Defendant BASF Corporation ("BASF"), and Defendant Par Pharmaceutical, Inc. ("Par") (collectively, "Parties") submit this Joint Statement in Response to Order to Show Cause re Settlement. This filing only addresses issues related to the settlement between Plaintiffs and BASF/Par addressed by the Court in its July 25, 2008 Order and the issues raised recently by Perrigo Pharmaceuticals Company and Counsel for Plaintiffs, Brian Witzer.

## I. INTRODUCTION

Plaintiffs filed a suit against Perrigo Pharmaceuticals Company, BASF, and Par claiming that defendants' respective ibuprofen tablets caused A.G.'s injuries. After two mediations, Plaintiffs and BASF reached an agreement to settle Plaintiffs' claims against BASF, which included a dismissal with prejudice of the claims against Par. Accordingly, Ms. Gaeta intends to petition this Court for approval of the compromise of the disputed claim of the minor, A.G., once the statutory requirements for such an approval have been met.

Following the settlement, arrangements to annuitize a portion of the settlement proceeds have been made, a Special Needs Trust has been drafted, a resolution of the lien claim of the State of California based on Medi-Cal payments has been reached, a compromise of the lien of Blue Cross of California has been reached, a Petition for Approval of Compromise of Minor Claims has been drafted, and final release and settlement documents were drafted. The only impediment to finalizing the settlement is the potential lien interests of the State of California related to benefits received by A.G. from the California Children Services Program.

Until the lien interest of the State is determined, and then satisfied, waived, or disclaimed as necessary, the settlement cannot be finalized, as this is both required by statute and necessary to determine the amount of funds available to purchase annuities and with which to fund the A.G. Special Needs Trust. To date, however, California has not provided Plaintiffs with sufficient information regarding its potential lien interest in order to resolve this issue and allow for approval of the settlement at issue here.

## II. FACTUAL BACKGROUND

### A. A.G.'s Claimed Injuries

A.G. is a fifteen year old male. His date of birth is April 15, 1993. Margarita Gaeta, Petitioner, is A.G.'s mother and serves as A.G.'s guardian ad litem for the purposes of this action. Both Petitioner and A.G. reside at 13429 Road 24, Madera, CA 93638.

On June 13, 2004, after being examined by his pediatrician for a second time following what Plaintiffs allege was a catastrophic adverse drug reaction, A.G. was referred to the emergency room and admitted with a diagnosis of septic shock and acute liver failure. He was then transferred to a Stanford facility for a liver transplant. At some point during his recovery, he developed gangrene in his toes and feet. Several digits of his fingers and toes were subsequently amputated.

His condition is stable now and his treatment includes periodic follow up visits to monitor his condition. He continues to take anti-rejection medication in connection with his 2004 liver transplant. He presently attends school in his home town and is progressing.

## B.    A.G.'s Medical Expenses

Charges for medical services provided to A. G. include the following:

| MEDICAL PROVIDERS | DATES OF SERVICE | CHARGES |
|---|---|---|
| Arup Lab | 6-13-04 to 8-1-05 | w/ hospital |
| Children's Hospital of Central California | 10-15-02 to 9-6-05 outpatient clinics & <br> 6-3-04 to 8-15-05 | $171,907.20 |
| Dr. Parveen Jindal | 6-13-04 to 4-23-05 | $1,132.75 |
| Pediatric Anesthesia Associates Medical Group | 6-3-04 to 11-12-04 | $5,560.00 |
| Pediatric Pathology Medical Group | 6-3-04 to 2-6-05 | $774.00 |
| Esoterix, Inc. Laboratory Services | 7-9-04 to 7-19-04 | $95.06 |
| Focus Diagnostic | 6-16-04 to 3-26-05 | $400.80 |

Joint Statement in Response to Order to Show Cause re Settlement           4

| | | |
|---|---|---|
| **Lucile Packard Children's Hospital** | 6-14-04 to 9-2-04; 3-23-05 and 3-24-05 | $1,399,831.61 |
| **Stanford Hospital and Clinics** | 6-14-04 to 9-24-04 | $134,958.00 |
| **Valley Specialty Medical Group** | 6-3-04 to 7-8-05 and 12-5-05 to 8-21-07 | $70,890.56 |
| **Wishon Radiological Medical Group** | 6-13-04 to 5-17-05 | $5,817.00 |

### C. Potential Lien Interests

The above-detailed medical expenses were paid through public and private health beneficiary services and plans. The California Department of Health Care Services (DHCS) administers two welfare programs including the MediCal Program and the California Children's Services Program. In order to ascertain the amounts of any liens held by the DHCS, Plaintiffs hired Floyd Faglie, a consultant familiar with identifying and negotiating health care liens. Faglie consulted directly with Department through its third party recovery unit and with other agencies with the State of California. A summary of his experience in trying to identify the lien holders, and difficulties therewith is attached in Exhibit 3. The experience of Faglie parallels the experience of Plaintiffs' counsel over the past few months. The potential lien/lien holders identified at this time include:

- The DHCS claims lien of $82,967.25 – for the MediCal payments. On May 23, 2008, Mary Flores with DHCS was contacted for an update. **Exhibit 1** is the June 2008 statement from the DHCS which indicates the lien amount is final.

- Meridian Resource Company, LLC (a recovery service for Blue Cross of California) also has a lien on medical benefits paid by Blue Cross of California on behalf of Plaintiff. On December 6, 2007 Plaintiffs' counsel received a letter in response to its request for final lien information from Meridian Resource Company, LLC. It stated the amount of the lien was $1,424.00. On May 15, 2008, Plaintiffs' counsel received a second letter from Meridian Resource Company, LLC indicating it would accept full and complete satisfaction of the reimbursement lien in the amount of $1,068.00. **Exhibit 2** is the letter dated May 15, 2008 that was received in response to request for final lien information from Meridian Resource Company, LLC.

- A payment by the California Children Service (CCS) State Fund of **$363,539.72** has been made on behalf of A.G. for his medical expenses  A particular state agency or third party with information indicating whether the California has a lien interest arising from that payment has not been identified.

County and state agencies have repeatedly referred inquiries about lien issues to the DHCS. Nevertheless, according to DHCS, it can only provide information related to MediCal liens, not any potential lien from CCS, even though the CCS program is administered by the DHSC. Inquiry to DHCS (at levels as high as the Director's office) refer Plaintiffs to the Recovery Specialists at DHCS. The recovery specialists insist that their only function is to administer liens/rights of recovery for MediCal, and that CCS rights are not administered by the

Joint Statement in Response to Order to Show Cause re Settlement                                         6

DHCS. County CCS offices have likewise referred Plaintiffs' counsel to DHCS to no avail. The process is circular and similar to the experience of Faglie.

As recently as Tuesday, August 26, 2008, Plaintiffs' counsel was informed by Don Peters of the Department of Health Care Services that there is a regional office for CCS that may offer assistance. At the request of Plaintiffs' counsel, DHCS has provided a written confirmation that their department will not be involved in any potential lien rights/claims/subrogation on behalf of CCS. Attached as Exhibit 4 is the letter Plaintiffs' counsel has received in response. Plaintiffs' counsel have worked with DHCS since May on the issue and received the MediCal lien information in June (Faglie's work began many months prior). Since then, the efforts have focused on the remaining potential lien with the CCS program. The Regional CCS office has been unable to provide any information about whether it maintains any lien rights and has referred the inquiry to its counsel and Plaintiffs' counsel is waiting on a response from counsel for the Regional CCS office. As shown by Exhibit 4, DHCS has no information about liens other than the State's MediCal lien.

A current draft of the, annuity options and trust documents are attached as Exhibit 5 for the Court's review and so that the Court will be further aware of the efforts of the parties to draw this matter to conclusion.

### III. CONCLUSION

Despite Plaintiffs' efforts to resolve the potential liens related to the provision of medical services to A.G., the DHCS simply has not come forward with the information necessary to allow Plaintiffs to do so. Although the Court has asked the parties to identify how much time

Joint Statement in Response to Order to Show Cause re Settlement     7

will be needed to finalize this agreement, regrettably, Plaintiffs cannot answer this question with any certainty due to the inability to date to identify the proper lien/lien holder other than to identify the lien holder generally as the State of California and/or CCS Program. The Parties would however, appreciate any assistance the Court may be able to offer in resolving the outstanding lien issues in this action.

DATED: August 28, 2008

Respectfully submitted:

**PENNER, BRADLEY & BUETTNER**

By: \Randall M. Penner\
**RANDALL M. PENNER**
**State Bar No. 101201**
PENNER, BRADLEY & BUETTNER
1171 W. Shaw Avenue, Suite 102
Fresno, California 93711
Phone: 559-221-2100
Fax: 559-221-2101


**TED B. LYON & ASSOCIATES, P.C.**

**\Marquette Wolf\**
**David W. Townend**
**State Bar No. 20155700**
**Marquette Wolf**
**State Bar No. 00797685**
**Ted B. Lyon, Jr.**
**State Bar No. 12741500**

18601 LBJ Freeway, Suite 525
Mesquite, Texas 75150
Telephone: (972) 279-6571
Telecopier: (972) 279-3021

**ATTORNEYS FOR PLAINTIFFS**

Dated: August 28, 2008          **ULMER & BERNE LLP**

By \Prentiss W. Hallenbeck\
    Prentiss W. Hallenbeck, Jr.
    Attorneys for Defendant
    Par Pharmaceutical, Inc.

Dated: August 28, 2008          **REED SMITH LLP**

By \J. David Bickham\
    J. David Bickham
    Attorneys for Defendant
    BASF Corporation

**\*\*\* ORDER \*\*\***

In light of the parties' representations, the Court VACATES the Order to Show Cause Re: Settlement and sets a Case Management Conference for **September 8, 2008 at 10 a.m.**

Dated: September 3, 2008

JAMES WARE
United States District Judge